GEORGE J. PRIESTER AVIATION SERVICE, INC., Plaintiff-Appellant, *v.* AMERICAN SCHOOL OF AVIATION, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 80-2160

Opinion filed April 22, 1981.

Gary David Friedman and Donald F. Spak, both of Arvey, Hodes, Costello & Burman, of Chicago, for appellant.

David A. Stall and Joseph A. Girardi, both of Sundheim & Stall, of Chicago, for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, George J. Priester Aviation Service, Inc., filed a petition for a rule to show cause why certain defendants should not be held in contempt of court for violating a preliminary injunction. Following a hearing on the contempt petition, the trial court denied the relief requested. The court also entered a mandatory injunction ordering the plaintiff to perform certain actions. The plaintiff appeals.

The plaintiff (airport) is the operator of Pal-Waukee Airport, a privately owned airport located in Wheeling, Illinois. The defendant, American School of Aviation, Inc. (ASA), is the operator of a flight training school and aircraft rental business at the airport. A. Michael Fischer is the president and director of ASA.

The record reveals the existence of much animosity between the airport and ASA which has resulted in numerous lawsuits involving the parties in both the State and Federal courts. The instant case involves the airport's attempt to enjoin ASA from allegedly violating the airport's regulations and safety requirements.

On July 19, 1980, the trial court entered an agreed preliminary injunction enjoining ASA,

> "* * * from violating Pal-Waukee Airport's rules and regulations pertaining to flight training operations pursuant to Part 141 of the Federal Aviation Regulations, ground traffic control signs and/or signals, and parking restrictions."

Subsequently, the airport filed its petition for a rule to show cause in which it alleged that Fischer intentionally violated said injunction by driving ASA's truck past two posted traffic signs and onto restricted taxiways and ramp areas used by jet aircraft. The traffic signs stated: "No vehicles beyond this point."

The evidence presented at the hearing on the petition disclosed that on July 25, 1980, airport personnel began construction of a drainage ditch at the airport. Materials used in the construction blocked the only access road which led to the area where ASA's planes were located. The evidence also revealed that prior to the start of the construction the airport re-assigned other planes which had been stored with ASA's aircraft to another storage area.

The airport called defendant, A. Michael Fischer, as a witness. On cross-examination, he testified that ASA received no notice that the roadway would be blocked on account of the construction. He stated that on the morning of July 25 two of his employees had used the access road to reach the planes prior to the time the road was blocked by the airport. When Fischer arrived at the airport, the road was blocked. At that time Fischer observed Riley O'Brien, the assistant manager of the airport, photographing the two ASA employees who were leaving the storage area via the taxiway. Fischer admitted driving onto the taxiway in order to check the condition of ASA's planes.

Riley O'Brien testified for the airport that he was supervising the construction activities when Fischer arrived in his vehicle. O'Brien stated that Fischer threatened him and announced his intentions to drive onto the taxiway. Fischer drove on the taxiway and O'Brien photographed his actions. O'Brien also admitted that he took pictures of the two ASA employees as they exited via the taxiway.

O'Brien explained that despite the construction activities, a pilot could park his vehicle and walk to ASA's planes. He stated that the blocked roadway only affected the ability of the pilot to drive his vehicle directly to the planes.

At the conclusion of the testimony of Fischer and O'Brien the trial court asked the attorney for the airport if he had any other witnesses and what would be the substance of their testimony. Counsel informed the court that the airport's maintenance chief would testify concerning the

amount of debris he removed after Fischer drove his vehicle across the ramp and taxiway. He also stated that Charles Priester would identify the construction plans and explain the rationale of moving all aircraft except those belonging to ASA to another location.

The trial court also asked ASA's attorney if he planned to present any witnesses. Counsel replied that Fischer would testify concerning the facts set forth in ASA's response to the petition for a rule.[1]

At this point the trial court explained that it had no time to hear additional evidence. The trial court stated that Fischer did violate the injunction by driving onto the taxiway. He also stated that it was apparent that the airport was not treating ASA in a fair manner. The court commented that the airport was going out of its way to make it difficult for ASA to operate. The court suggested that the parties work out an agreement to provide ASA with access to its planes.

After a recess the parties informed the court that they were unable to reach an agreement. Subsequently, the trial court entered its order finding that although Fischer did drive ASA's vehicle past an airport stop sign and onto a restricted area, said conduct was not a contemptuous violation of the preliminary injunction and, therefore, denied plaintiff's petition for a rule to show cause. The court further ordered the airport to,

> "* * * immediately remove all obstructions and impediments blocking vehicular access to North Wolf Road area presently containing the aircraft used in its (American's) business operations and to provide continuous vehicular access to said area."

It is from this order that the airport appeals.

■■ ■ The airport first contends that the trial court erred in issuing a mandatory injunction *sua sponte*. We agree.

The parties were present in court for a hearing on the airport's petition for a rule to show cause. There was no reason for the airport to present evidence concerning the removal of the construction materials since ASA had not requested injunctive relief of any form in its pleadings.

The Injunction Act provides that a court shall not issue a preliminary injunction without notice,

---

[1] In its response ASA asserted that it was not given any notice of the construction. It claimed that for the safety of its students and instructors it was imperative that Fischer drive to the airplane area in order to inspect and service the aircraft. According to ASA, the airport had refused to fuel ASA's aircraft under any circumstances.

ASA also alleged that the airport deliberately trapped the occupants of the two vehicles who had driven to the storage area prior to the time the access road was blocked. ASA claimed that the airport forced the drivers to violate the injunction by exiting via the taxiway, the only means of egress.

ASA concluded that the airport's attempt to manufacture a violation of the preliminary injunction was a contemptuous abuse of the court. The response, however, contained no prayer for any relief.

"* * * unless it clearly appears, from specific facts shown by the verified complaint or by affidavit accompanying the same, that immediate and irreparable injury, loss or damage will result to the applicant before notice can be served and a hearing had thereon." (Ill. Rev. Stat. 1979, ch. 69, par. 3.)

In the instant case the airport received no notice of a request for a mandatory injunction, and ASA made no verified allegations of irreparable injury, loss or damage. Furthermore, it is a general rule that an injunctive order should not be broader in scope than the relief sought in the pleadings. (*Cook County v. Rosen & Shane Wine & Spirits, Inc.* (1978), 58 Ill. App. 3d 744, 374 N.E.2d 838.) As we have discussed, there were no pleadings requesting injunctive relief. Thus, that portion of the trial court's order directing the airport to remove the construction materials must be vacated.

■■ We also note that procedural due process of law requires that every person be given the opportunity to be heard before being deprived of his property. (*In re Marriage of Szczotka* (1980), 87 Ill. App. 3d 314, 409 N.E.2d 54.) Here, the airport was denied the opportunity to present all of its witnesses and to cross-examine Fischer, who was prepared to testify in his own behalf. This action of the trial court clearly violated the airport's right to due process of law.

ASA contends that the trial court's order was proper because the court was protecting itself from an abuse of its process. Such an argument presumes that the trial court agreed with ASA that the drainage construction was a ploy to force a violation of the agreed preliminary injunction. Although the actions of the airport certainly could justify such a conclusion, the trial court specifically stated that "I am going to assume that everybody in this situation act[ed] out of good faith, although there is much reason to doubt that." Thus, it is apparent that the trial court did not issue the mandatory injunction to protect the integrity of the court, but rather to provide relief to ASA.

The airport also argues that the trial court erred in refusing to hold ASA and Fischer in contempt of court. The airport asserts that the manifest weight of the evidence demonstrated that Fischer intentionally drove onto the restricted area without justification.

■■ Whether a party is guilty of civil contempt is a question of fact to be determined by the trial court. Absent a clear abuse of discretion, the court's decision will not be disturbed on review. *American Cyanamid Co. v. Rogers* (1974), 21 Ill. App. 3d 152, 314 N.E.2d 679.

In the instant case the trial court decided not to hold the defendants in contempt because of the circumstances surrounding the violation of the order. The evidence revealed that when Fischer arrived at the airport to check the condition of the aircraft, he discovered that the airport had

blocked the only authorized means of access without notice. It was also undisputed that at the time of Fischer's arrival, O'Brien was photographing the two ASA employees who were forced to exit via the taxiway. Under these circumstances, we cannot say that the trial court's decision amounted to an abuse of discretion.

For the foregoing reasons, we affirm the trial court's denial of the airport's petition for a rule to show cause, and we vacate the issuance of a mandatory injunction.

Affirmed in part; vacated in part.

RIZZI, P. J., and McNAMARA, J., concur.

