SIX-BROTHERS KING DRIVE SUPERMARKET, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

First District (3rd Division) No. 1—87—2745

Opinion filed December 27, 1989.

Burke & Smith, Chartered, of Chicago (Raymond J. Smith, Mary Patricia Burns, and John H. Wickert, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn M. Denney, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE McNAMARA* delivered the opinion of the court:

Plaintiff, Six-Brothers King Drive Supermarket, sought judicial review of final tax assessments made by defendant Illinois Department of Revenue (the Department). The trial court dismissed the cause for want of jurisdiction due to plaintiff's failure to file the required appeal bond, and the court entered judgment in defendant's fa-

---

*Justice McNamara participated in this appeal prior to his transfer to the sixth division.

vor. Plaintiff appeals.

On December 2, 1981, the taxpayer was issued a notice of tax liability for retailers' occupation and municipal retailers' occupation tax deficiencies of $325,703, civil fraud penalty of $65,140.60 and interest computed through December 31, 1982, in the amount of $130,677.23. The notice covered the period of September 1979 through December 1981, showing a total liability of $521,520.83 with additional accumulated interest.

On December 19, 1986, a hearing was held by an administrative law judge of the Department of Revenue. In opening statements, the attorneys indicated the liability was based on the lack of books and records and the disallowance of deductions. The Department proceeded with its case in chief. In regard to whether the taxpayer had previously seen the original and reaudit reports, a brief recess was held so that the taxpayer's attorneys could confer with its corporate president, Khalil Sweilem. Sweilem's attorney then informed the ALJ that he had just learned that the taxpayer's records and books were now available. In addition, Sweilem no longer wished that attorney to represent the taxpayer. The Department objected to counsel's motion to withdraw as taxpayer's counsel, due to the age of the case, the untimeliness of the motion, and the fact that the auditor had repeatedly requested records.

The ALJ requested that the auditor testify. Auditor Juricek testified regarding the written and verbal requests for the records. The ALJ then informed Sweilem that his law firm could withdraw if he wished, but there would be no continuance and Sweilem could not represent the corporate taxpayer. Sweilem, however, dismissed his attorneys. He asked for a new attorney, while acknowledging that he had signed a power of attorney contained in the original audit report appointing his previous attorneys. Sweilem insisted he had never been told about the request for records. The request for a continuance was denied, as was the Department's request for additional time to produce documentary evidence in support of the civil fraud penalty. Following Juricek's testimony, the hearing was closed, and the matter proceeded to judgment.

In a subsequent written decision, the ALJ found that the inconvenience to the parties, witnesses and judge required that a continuance request be supported by grave reasons once a case reaches the trial stage (*Schneider v. Seibutis* (1972), 3 Ill. App. 3d 323, 279 N.E.2d 37), and that here the taxpayer "failed to give any explanation for the sudden availability of previously unavailable records, and so continuance on the ground of new evidence is unjustified." Simi-

larly, substitution of attorney after the trial has begun is up to the discretion of the judge (*In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811), and was denied here because the taxpayer "gave no compelling reason for the seemingly last minute decision to change attorneys," which appeared to be nothing more than a delay tactic. Moreover, the ALJ refused to permit the corporate president to act on behalf of the corporation pursuant to section 2—416 of the Code of Civil Procedure, which provides that a corporate officer may represent the corporation in court only where the action was "for money not in excess of $2,500, exclusive of interests and costs, or for collection of taxes not in excess of that amount." Ill. Rev. Stat. 1985, ch. 110, par. 2—416.

The ALJ concluded that the notice of tax liability should be reduced in accordance with the reaudit results and finalized as amended, and that the civil fraud penalty would stand.

On January 26, 1987, following the administrative hearing, defendant assessed over $300,000 of unpaid State and municipal retailers' occupation and use taxes against plaintiff. On March 13, 1987, plaintiff filed a complaint for administrative review. Defendant filed a motion to dismiss the complaint for failure to post an administrative review bond as required by statute. The trial court granted the motion to dismiss without reaching the merits of the appeal and entered judgment for defendant.

The taxpayer contends no meaningful hearing was given because the ALJ denied the taxpayer's request for a continuance after its president declared that he now had, and would give to the Department, all the requested records and books, and also wished to obtain new counsel. The result, it maintains, was an unfair hearing because final judgment was entered without review of the taxpayer's books and records.

The hearing was attended by Sweilem, represented by Messrs. William E. Borenstein and Ira M. Burman. Borenstein objected when the Department introduced exhibit 13, 90 pages of audit workpapers, and asked for a brief recess because his client had not seen those papers. After the recess, and no further objections by counsel, exhibit 13 was admitted. Sweilem then stated, "I have [an] objection." The ALJ replied, "I'm sorry, sir. You're represented by counsel."

Borenstein again objected when the Department introduced group exhibit 14, the reaudit workpapers. Borenstein explained that the auditor's comments and backup materials had never been sent to taxpayer's counsel. After an off-the-record discussion, Borenstein stated:

"Your Honor, I have conferred with Mr. Sweilem, president of the Taxpayer, who advises me that he's in possession of the books and records of the corporation for the audit period in question.

As counsel for the Department realizes from the audit workpapers, there were no books and records made available to the auditor at the time of the initial audit and the reaudit, and he based his assessment and reductions of tax liability upon certain estimates and supplier information which, pursuant to his own comments, is incomplete.

As a result of the existence of these records and the statements by the Taxpayer's principal officer that he no longer wishes us to represent him, we would request and motion to this court that we be granted leave to withdraw as counsel for the Taxpayer and this matter be set over for a time when Mr. Juricek [Department's auditor] can review the records in question for purposes of arriving at an assessment based on the actual books and records."

The ALJ indicated she would like to examine the auditor regarding the request for books and records. The ALJ also found that neither a motion for a continuance nor for new counsel was timely. Borenstein asked the court for direction as to how to proceed. The court stated: "Well, I'll leave that up to the client. He can either allow you to finish representing him today, or he can allow me to make my decision on the evidence that's already been put into the record."

The Department then called Michael Juricek, its auditor, who testified that he had repeatedly requested, in writing and verbally, the books and records of the taxpayer. The ALJ asked Borenstein if he was going to cross-examine.

"BORENSTEIN: Your Honor, I don't know whether I'm employed by the client at the moment.

THE JUDGE: I understand.

BORENSTEIN: Okay.

THE JUDGE: Is your attorney, Mr. Borenstein, employed by you at this point in time, sir?

SWEILEM: This is first time I met him here. I never talked to him.

THE JUDGE: That's not what I asked you, sir.

* * *

Is he your attorney at this point in time?

BORENSTEIN: Excuse me. Is Mr. Burman your attorney?

SWEILEM: Yes.

BORENSTEIN: All right.

THE JUDGE: Mr. Burman, would you like to cross-examine?

BURMAN: Mr. Borenstein is with my firm, so they hired me and they also hired Mr. Borenstein. If we are still representing the client, then Mr. Borenstein can proceed.

THE JUDGE: Sir?

BORENSTEIN: Is that all right with you?

SWEILEM: What, to stay on? No, I feel I'm not well represented. I need another lawyer."

The court then granted the motion to withdraw. The ALJ admonished Sweilem that he was a corporate officer, and had no law degree or license. Sweilem responded:

"No. I am asking you, your Honor, to give me another chance, honestly to have a—hire a lawyer and to go back to all records and books and work it out, see the difference in good faith.

I'm willing, you know, and I deserve a second chance as anybody, honest, because I didn't have this the first time."

The ALJ referred to Juricek's testimony that he repeatedly requested the records, which Sweilem denied having. Sweilem stated he could not remember if he was president at that time.

"SWEILEM: This is before this arbitrary, you know, case, and I can't remember what is being done on this time.

THE JUDGE: All right.

SWEILEM: But can I ask, you know—

THE JUDGE: All right.

SWEILEM: —a couple of questions?

THE JUDGE: No, sir.

SWEILEM: I can't?

THE JUDGE: You're not an attorney.

SWEILEM: Okay.

THE JUDGE: I can't let you represent a corporation.

SWEILEM: Then I am entitled to have an attorney. You know what I mean?

THE JUDGE: Well, I don't think your motion for substitution of attorneys is timely, and you fired the first two attorneys you had.

SWEILEM: I didn't fire them. I said I'm not well represented.

I need time to think about what's being done because they surprised me, you know, with these things here. I didn't know

the guy, just here in this room.

THE JUDGE: But you did know Mr. Burman, did you not, Ira Burman?

SWEILEM: Yes, I knew him.

THE JUDGE: You knew him and retained him, and you waited till the morning of trial—

SWEILEM: He never told me about, you know, they asking about records and books. I never know [sic] about it.

THE JUDGE: All right, sir.

SWEILEM: He never told me to make them available to him,—

THE JUDGE: All right.

SWEILEM: —and he never asked me for them.

THE JUDGE: It's my interpretation of the existing law that I cannot permit you to represent the corporation, and your attorneys are no longer with us. Therefore, we're going to close the hearing at this time."

The Department asked to reoffer the reaudit report, and the ALJ admitted Department's exhibit 14. The Department asked for time to obtain a copy for the civil fraud penalty. The ALJ refused, but permitted the Department to call Juricek on that file. The two pages of transcript show that the Department asked only a few questions about the basis of the civil fraud penalty imposed by the auditor. The ALJ then stated, "This matter is now closed."

■■ ■ We agree with the taxpayer that what transpired before the ALJ did not constitute a meaningful hearing. Illinois courts have a duty to ensure that due process and impartial hearings were afforded in administrative hearings. (*Lee v. City of Peoria* (7th Cir. 1982), 685 F.2d 196.) An administrative body possesses broad discretion in conducting its hearings, but that discretion must be exercised judicially and not arbitrarily. (*Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754; *Montgomery v. Department of Registration & Education* (1986), 146 Ill. App. 3d 222, 496 N.E.2d 1100.) Under the fourteenth amendment, the opportunity to be heard should not be arbitrarily limited and fair consideration of an individual's objections should be included. *Mahonie v. Edgar* (1985), 131 Ill. App. 3d 175, 476 N.E.2d 474.

■■ The ALJ here denied the taxpayer's request for a continuance. An administrative agency possesses broad discretion in determining whether or not to grant a continuance. (*Phillips v. Civil Service Comm'n* (1988), 172 Ill. App. 3d 278, 526 N.E.2d 549.) However, a motion for a continuance should be granted by a hearing officer

whenever justice requires it. (*Joliet Sand & Gravel Co. v. Pollution Control Board* (1987), 163 Ill. App. 3d 830, 516 N.E.2d 955.) The denial of the motion for a continuance here resulted in injustice for two reasons.

■ First, the refusal to continue the hearing meant that the Department could not review the books and records which were now available. Hearings before an administrative agency should be investigatory proceedings instituted for the purpose of ascertaining and making findings of facts. (*Lavin v. Civil Service Comm'n* (1974), 18 Ill. App. 3d 982, 310 N.E.2d 858.) Hearings are not meant to be partisan, with the agency pitted against the individual. (*Goranson v. Department of Registration & Education* (1980), 92 Ill. App. 3d 496, 415 N.E.2d 1249.) In effect, the taxpayer handed the Department the documents which would best serve the Department's function of ascertaining the truth, and the Department refused to look at the documents. We acknowledge the fact that numerous requests had been made and the taxpayer had previously failed to turn over the documents; however, other appropriate means should be used to sanction such actions by a taxpayer. *Cf. Puleo v. Department of Revenue* (1983), 117 Ill. App. 3d 260, 453 N.E.2d 48 (court dismisses argument that taxpayer's books and records were ignored where taxpayer never produced any records and stated that he never kept sales records).

■ Second, the refusal to continue the hearing meant that the taxpayer could not be represented either by its corporate officer or by an attorney of its choice. The Retailers' Occupation Tax Act provides that all hearings conducted by the Department are governed by the Administrative Procedure Act (Ill. Rev. Stat. 1987, ch. 127, par. 1001 *et seq.*). (Ill. Rev. Stat. 1987, ch. 120, par. 450a.) The Administrative Procedure Act provides that a party has the right to be represented by counsel and the right to respond to and present evidence and argument. (Ill. Rev. Stat. 1987, ch. 127, par. 1010(b).) Due process of law presupposes a fair and impartial hearing. (*Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754.) Procedural due process requires that every person be given the opportunity to be heard before being deprived of his property. (*George J. Priester Aviation Service, Inc. v. American School of Aviation, Inc.* (1981), 95 Ill. App. 3d 703, 420 N.E.2d 615.) Here, the Department denied the taxpayer the opportunity to represent itself, to offer any witnesses or documentary evidence, or to cross-examine the auditor. Basic notions of fair play require that parties have an opportunity to cross-examine, explain or refute facts which form the basis

for an administrative agency's adjudication. *Caterpillar Tractor Co. v. Pollution Control Board* (1977), 48 Ill. App. 3d 655, 363 N.E.2d 419.

We recognize that the absence of counsel for the taxpayer was the fault of Sweilem, and not the result of an emergency. (*Cf. Ullmen v. Department of Registration & Education* (1978), 67 Ill. App. 3d 519, 385 N.E.2d 58 (continuance should be granted where attorney's wife became seriously ill; no charge that the claim of illness was untrue, made in bad faith, or could have been presented earlier); *State v. Crank* (Tex. 1984), 666 S.W.2d 91 (no abuse of discretion in refusing to grant continuance of dentist's disciplinary hearing where dentist fired his attorney on the morning of the hearing due to "philosophical differences," and reaffirmed discharge after continuance request denied, and two previous continuances had been granted).) However, unique circumstances are presented here due to the inability of a corporate officer to represent the corporation in an action involving over $2,500. (Ill. Rev. Stat. 1987, ch. 110, par. 2–416.) Thus, the taxpayer was prevented from any type of representation at all, and the hearing became an *ex parte* proceeding, with Sweilem required to sit mute and watch.

■ The right to counsel has been interpreted to mean the right to counsel of one's own choice. (*Great Lakes Screw Corp. v. N.L.R.B.* (7th Cir. 1969), 409 F.2d 375, citing *Backer v. Commissioner of Internal Revenue* (5th Cir. 1960), 275 F.2d 141.) By denying the taxpayer its statutory right to counsel of its choice, administrative due process has been violated under the facts before us here. *Cf. Puleo v. Department of Revenue* (1983), 117 Ill. App. 3d 260, 453 N.E.2d 48 (no right to counsel during initial investigatory stages in administrative proceeding); see also *City of Chicago v. Birnbaum* (1971), 49 Ill. 2d 250, 274 N.E.2d 22 (court finds no absence of procedural due process where, in hearing regarding building code violations, defense counsel is given leave to withdraw and defendant, an attorney, proceeds with his own defense at trial and makes no objection to the continuation of trial without additional counsel).

■ We sympathize with the inconvenience caused by the taxpayer's conduct, and with the Department's goal of attempting to achieve a prompt and economical determination on the merits. However, this alone does not justify denial of a continuance under the unique facts presented here. Where an administrative body must choose between justice and speed, it must pick the side of justice. (See *Ullmen v. Department of Registration & Education* (1978), 67 Ill. App. 3d 519, 385 N.E.2d 58.) Thus, upon careful consideration of

the allegations of unfairness and a review of the record, we determine that precepts of fair play and due process require a reversal and remand of this cause to the Department for a new hearing. We emphasize that the circumstances presented here are highly unusual, and we do not suggest that an agency should routinely grant continuances when a party discharges his attorney after the hearing begins. (See *Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754.) We make no finding, of course, on whether or not the assessment and judgment of the Department might otherwise be justified on the merits.

 In view of our holding, we need not address the taxpayer's contention that the bond requirement is unconstitutional as applied under *Boddie v. Connecticut* (1971), 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780. We note, however, that the statutory bond requirement, or alternative lien requirement, is jurisdictional. (Ill. Rev. Stat. 1987, ch. 120, par. 451; *Meyer Steel Drum, Inc. v. Department of Revenue* (1987), 152 Ill. App. 3d 84, 504 N.E.2d 148; *Piasa Motor Fuels, Inc. v. Illinois Department of Revenue* (1985), 138 Ill. App. 3d 422, 486 N.E.2d 379.) In this case, however, the court retains jurisdiction to answer the question of whether or not a meaningful hearing took place. To hold otherwise would be placing procedure over substance. See *Meyer Steel Drum, Inc. v. Department of Revenue* (1987), 152 Ill. App. 3d 84, 504 N.E.2d 148.

For the foregoing reasons, the judgment of the circuit court of Cook County dismissing the complaint for administrative review for lack of jurisdiction and entering judgment in favor of defendant is reversed, and the cause is remanded for further proceedings consistent with the views contained herein.

Judgment reversed and remanded.

FREEMAN, P.J., and RIZZI, J., concur.